1  SEAN P. NALTY  (SBN 121253)
   WILSON, ELSER, MOSKOWITZ,
2    EDELMAN & DICKER LLP
   525 Market Street, 17th Floor
3  San Francisco, California  94105
   Tel:    (415) 433-0990
4  Fax:    (415) 434-1370

5  Attorneys for Defendant
   LIFE INSURANCE COMPANY
6  OF NORTH AMERICA

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        (OAKLAND BRANCH)

11

12  ALFREDO MOCTEZUMA,                   )  CASE NO.:   CV08-01451 CW
                                         )
13             Plaintiff,                )  **LIFE INSURANCE COMPANY OF**
                                         )  **NORTH AMERICA'S MEMORANDUM**
14        v.                             )  **OF POINTS AND AUTHORITIES IN**
                                         )  **SUPPORT OF ITS MOTION TO DISMISS**
15  CATHOLIC HEALTHCARE WEST, LIFE       )  **UNDER FEDERAL RULE OF CIVIL**
    INSURANCE COMPANY OF NORTH           )  **PROCEDURE 12(b)(6)**
16  AMERICA, and DOES 1-10, inclusive.   )
                                         )  Date:         June 5, 2008
17             Defendants.               )  Time:         2:00 p.m.
                                         )  Courtroom:    2
18  _____  )  Judge:        Hon. Claudia Wilken
                                            Action Filed: 02/20/2008
19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF ARGUMENTS .......................................................................... 1

III.    PLAINTIFF'S COMPLAINT.............................................................................. 2

     A.    Plaintiff's First Claim for Relief for Tortious Bad Faith Is Based
          On the Bad Faith Denial of Plaintiff's Disability Claim in February 2004 ................... 2

     B.    Plaintiff's Second Claim for Relief for Intentional Infliction Also is
          Based on the February 2004 Denial of Plaintiff's Disability Claim ............................ 2

IV.     LEGAL ARGUMENT.......................................................................................... 3

     A.    Plaintiff's Claim for Bad Faith Sounds in Tort............................................. 3

     B.    Plaintiff's Claim for Relief for Bad Faith is Governed by a 2-Year
          Limitation Period ........................................................................................... 5

     C.    Plaintiff's Claim for Relief for Intentional Infliction is Governed by a
          One Year Limitation Period............................................................................ 6

     D.    Plaintiff's Claims for Relief for Bad Faith and Intentional Infliction
          Accrued When His Benefits Were Terminated in February 2004 .................. 6

     E.    Plaintiff's First and Second Claims for Relief are Time Barred ................... 9

V.      CONCLUSION................................................................................................... 10

1

<u>TABLE OF AUTHORITIES</u>

2

**Cases**

3  *Archdale v. American Internat. Specialty Lines Ins. Co.,*
4      154 Cal. App. 4th 449, 472 (2007) ................................................................. 3, 4, 6

5  *Brandt v. Superior Court,*
6      37 Cal.3d 813, (1985) ................................................................................................ 4

7  *Cochran v. Cochran,*
       56 Cal. App. 4th 1115, 1120 (1997) ........................................................................ 9

8  *Cantu v. Resolution Trust Corp.,*
9      4 Cal. App. 4th 857, 889 (1992) ........................................................................ 7, 9

10 *Egan v. Mutual of Omaha Ins. Co.,*
11     24 Cal. 3d 809, 824 Fn. 7 ( 1979) ........................................................................... 5

12 *Erreca v. Western States Life Ins. Co.,*
13     19 Cal.2d 388, 402 (1942) ....................................................................................... 5

14 *Fox v. Ethicon Endo-Surgery, Inc.*
       35 Cal. 4th 797, 806 (2005) ................................................................................ 8, 10

15 *Gutierrez v. Mofid,*
16     39 Cal. 3d 892, 897 (1985) ....................................................................................... 8

17 *Harrell v. 20th Century Ins. Co.,*
18     934 F.2d 203, 207 (9th Cir. 1991) ........................................................................... 3

19 *Heighley v. J.C. Penney Life Ins. Co.,*
       257 F. Supp. 2d 1241, 1257 (C.D. Cal. 2003) ........................................................ 5, 6

20
21 *Jolly v. Eli Lilly & Co.,*
       44 Cal. 3d 1103, 1110-11 (1988) .............................................................................. 8

22 *Love v. Fire Ins. Exch.,*
23     221 Cal. App. 3d 1136, 1143 (1990) ..................................................................... 6, 7

24 *Magpali v. Farmers Group,*
25     48 Cal. App. 4th 471, 485 (1996) ............................................................................. 7

26 *Neff v. New York Life Ins. Co.*
       30 Cal.2d 165, 172-173 (1947) ................................................................................. 9

27
28 *Nelson v. Indevus Pharmaceuticals,*
       2006 Cal. App. LEXIS 1379 *6-7 (2006)................................................................. 8

*Norgart v. Upjohn Co.,*
    21 Cal. 4th 383, 397 (1999) ............................................................................. 1, 7, 9

*Richardson v. Allstate Ins. Co.,*
    117 Cal. App. 3d 8, 11 (1980) ........................................................................... 6

*Romano v. Rockwell Internat.,*
    14 Cal. 4th 479, 489 (1996) ............................................................................... 9

*Scannell v. County of Riverside,*
    152 Cal. App. 3d 596, 616 (1984) ..................................................................... 7

*Slovensky v. Friedman,*
    2006 Cal. App. LEXIS 1438 *17 (2006) ........................................................ 7, 8

*V.C. v. Los Angeles Unified School Dist.,*
    139 Cal. App. 4th 499, 515 (2006) .................................................................... 8

*Whorton v. Dillingham,*
    202 Cal. App. 3d 447, 456 (1988) ..................................................................... 9

**Statutes**
California Code of Civil Procedure § 339 ............................................................ 1, 6
California Code of Civil Procedure § 340 ............................................................ 1, 7
Cal. Civil Code 3300............................................................................................. 5

## I.     **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Life Insurance Company of America ("LINA") moves to dismiss plaintiff Alfredo Moctezuma's ("plaintiff") first claim for relief for tortious breach of the covenant of good faith and fair dealing ("tortuous bad faith") and second claim for relief for intentional infliction of emotional distress ("intentional infliction"). These claims for relief are time barred as they each accrued in February 2004 and plaintiff's complaint for damages in this matter ("The Complaint") was not filed until February 2008.

## II.     **SUMMARY OF ARGUMENTS**

This motion is based exclusively on the allegations in the Complaint.  Plaintiff bases his claims for relief for tortuous bad faith and intentional infliction on the alleged bad faith denial of his claim for disability benefits under a group disability policy ("the Policy") issued by LINA to Catholic Healthcare West ("CHW"). The Complaint, ¶¶ 4-13.   These claims for relief accrued in February 2004 when LINA committed the alleged wrongful act that is the centerpiece of this lawsuit, the alleged bad faith denial of plaintiff's claim for disability benefits ("the Claim").   The Complaint, ¶¶ 8-9; *Norgart v. Upjohn Co*., 21 Cal. 4th 383, 397 (1999).   ("The general rule for defining the accrual of a cause of action sets the date as the time when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. (Cites omitted).")

Plaintiff's claim for relief for intentional infliction is governed by the one-year limitation period under Cal. Code of Civil Procedure ("C.C.P.") § 340 and his claim for tortuous bad faith is governed by the two-year limitation period under C.C.P. § 339.   The two-year limitation period under C.C.P. § 339 applies to the claim for bad faith because plaintiff alleges tortuous bad faith rather than contractual bad faith.   This is established by the fact that plaintiff seeks attorney's fees, future disability benefits, and financial distress damages in his first claim for relief and this relief is only available under a claim for tortuous bad faith.

Applying these statutory limitation periods, it is clear that plaintiff's claims for tortuous bad faith and intentional infliction are time barred.  They accrued in February 2004 when the Claim was allegedly wrongfully denied and plaintiff did not file the Complaint until February 20, 2008.

1

2                    III     **PLAINTIFF'S COMPLAINT**

3   **A.    Plaintiff's First Claim for Relief for Tortious Bad Faith Is Based on the Bad Faith**
        **Denial of Plaintiff's Disability Claim in February 2004.**
4

5          The Complaint in this matter is based on the alleged wrongful denial of plaintiff's claim

6   for disability benefits under the Policy. The Complaint, ¶¶ 4-13.  Plaintiff alleges that he has

7   been disabled since July 11, 2001 when he was unable to perform his job at CHW. *Id.* at ¶ 5.  He

8   further alleges that: "Defendant paid benefits to Mr. Moctezuma from January 7, 2002 until

9   February 2004, at which time defendant terminated benefits alleging that plaintiff was no longer

10  disabled" and that "[t]he termination of benefits was made despite the continuing disability of

11  Mr. Moctezuma and in bad faith." The Complaint, ¶¶ 8 & 9.

12         Plaintiff goes on to allege that CIGNA "undertook to insure Ms. (sic) Moctezuma against

13  disability" and that "defendant CIGNA acted in bad faith in connection with the termination of

14  benefits to Mr. Moctezuma . . ." *Id.* at ¶ ¶12 & 13[1].  Plaintiff describes the specific acts by

15  CIGNA that allegedly constitute bad faith conduct, all of which pertain to the alleged

16  inadequacies of CIGNA's claim evaluation that led to the alleged wrongful denial of the claim in

17  February 2004. *Id.* at ¶ 12 A-F.

18

19  **B.    Plaintiff's Second Claim for Relief for Intentional Infliction Also is Based on the**
        **February 2004 Denial of Plaintiff's Disability Claim.**

20         Plaintiff's claim for intentional infliction is based on the denial of the claim by CIGNA as

21  described in paragraphs 1 through 13 of the Complaint.  Plaintiff alleges that:

22         The actions of defendants, set forth in 1-13 above, were and are extreme and
           outrageous, and were and are known by them to be substantially certain to cause
23         Mr. Moctezuma great emotional distress.  In particular, defendants abused their
           rights under the policy by arbitrarily rejecting the opinions of all of the treating
24         health care providers.  Defendants were well aware that Mr. Moctezuma relied
           upon defendant for his financial security and well-being, and that the arbitrary
25         termination of benefits would cause him great emotional and financial harm.

26  The Complaint, ¶ 16.  Paragraphs 1 through 13 of the Complaint, referred to above, describe the

27  Policy, the alleged bad faith handling of the Claim, and the alleged bad faith denial of the Claim in

28

---

[1] Plaintiff refers to Life Insurance Company of North America as CIGNA throughout the Complaint.

1  February 2004.   Like the claim for tortuous bad faith, plaintiff's claim for intentional infliction is

2  based on the alleged bad faith denial of the claim and the great emotional distress experienced by

3  plaintiff as a result of the denial.

## IV.   LEGAL ARGUMENT

**A.     Plaintiff's Claim for Bad Faith Sounds in Tort**

6         The first step in applying a limitation period to a claim for bad faith is to determine if the

7  claim for relief sounds in tort rather than contract.  *Harrell v. 20th Century Ins. Co.*, 934 F.2d

8  203, 207 (9th Cir. 1991).   A four year limitation period applies to a contractual breach of the

9  covenant of good faith and fair dealing while a two year limitation period applies to a claim for

10  tortuous bad faith. *Harrell v. 20th Century Ins. Co.*, *supra*, 934 F.2d at 207.

11        As the court pointed out in *Harrell, supra,* a claim for tortuous bad faith arises as the result

12  of a special relationship, primarily under insurance contracts. *Harrell v. 20th Century Ins. Co.*,

13  *supra*, 934 F.2d at 207-208 ("California recognizes such torts only in the context of insurance

14  contracts and other contracts where there is a 'special relationship' between the parties to the

15  contract, characterized by elements of public interest, adhesion, and fiduciary responsibility. Cite

16  Omitted.")  Here, plaintiff alleges that his claim for tortuous bad faith arises out of a group disability

17  insurance policy issued by LINA. Complaint, ¶¶ 6-13.  This special relationship, created by this

18  insurance contract, establishes that plaintiff's first claim for relief for bad faith sounds in tort.

19        Moreover, the relief plaintiff seeks in his first claim for relief also establishes that his bad

20  faith claim sounds in tort.  He alleges entitlement to attorney's fees, future disability benefits, and

21  financial distress damages, relief that can be recovered <u>only</u> under a claim for relief for tortuous

22  bad faith.  *Archdale v. American Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 472

23  (2007) ("As already indicated, the Archdales have only sought recovery in contract. Godinez, on

24  the other hand, is seeking to recover for emotional distress and punitive damages, the only claim

25  remaining to him. Given the relief he seeks, however, his only remedy is in tort.")

26        Plaintiff  alleges damages in the form of attorney's fees and cites in the Complaint the

27  California Supreme Court's opinion in *Brandt v. Superior Court*, 37 Cal.3d 813, (1985) as legal

28

1  support for this relief.  The Complaint, ¶ 27.  The court in *Brandt* held that attorney's fees are

2  recoverable only under a claim for tortuous bad faith:

> It is well settled that an insurer, in discharging its contractual
> responsibilities, fails to deal fairly and in good faith with its insured by
> refusing, without proper cause, to compensate its insured for a loss covered
> by the policy, such conduct may give rise to a cause of action in tort for
> breach of an implied covenant of good faith and fair dealing. (Cites
> Omitted.) When such a breach occurs, the insurer is liable for any damages
> which are the proximate result of that breach. (Cites Omitted.)

> When an insurer's tortious conduct reasonably compels the insured to retain
> an attorney to obtain the benefits due under a policy, it follows that the
> insurer should be liable in a tort action for that expense. The attorney's fees
> are an economic loss -- damages -- proximately caused by the tort. (Cite
> Omitted.) These fees must be distinguished from recovery of attorney's fees
> qua attorney's fees, such as those attributable to the bringing of the bad faith
> action itself. What we consider here is attorney's fees that are recoverable as
> damages resulting from a tort in the same way that medical fees would be
> part of the damages in a personal injury action.

12  *Brandt, supra* at 817; *Archdale v. American Internat. Specialty Lines Ins. Co.*, *supra*, 154 Cal. App.

13  4th at 468 (" In addition, if the Archdales had elected to proceed in tort, they would also have been

14  entitled (absent any statute of limitations issue) to seek recovery of so-called "Brandt" fees under

15  *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817.")  By seeking attorney's fees in paragraph 27

16  of the Complaint, plaintiff in this matter elected to proceed with a claim for tortuous bad faith.

17      Moreover, plaintiff claims entitlement to future disability benefits, relief that is only

18  recoverable under a claim for relief for tortuous bad faith The Complaint states that "Mr.

19  Moctezuma is entitled to future benefits under the insurance policy." The Complaint, ¶ 24.

20  Although plaintiff can recover disability benefits to the present under his breach of contract claim,[2]

21  he can get future benefits <u>only</u> under a claim for tortuous bad faith. The Supreme Court, in *Egan v.*

22  *Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 824 Fn. 7 ( 1979) held that:

> Mutual also contends that the compensatory damage award should be
> reversed because the trial court permitted the jury to award future policy

23

24

_____

25  [2] Plaintiff also alleges that he is entitled to disability benefits under the policy from February 24,
2004 to the present. The Complaint, ¶ 24.  He is entitled to back disability benefits under his claim

26  for relief for breach of contract. Cal. Civil Code 3300; *Erreca v. Western States Life Ins. Co.*, 19
Cal.2d 388, 402 (1942) ("A contrary conclusion is compelled by the very nature of disability

27  insurance. Such a policy constitutes a continuing contract for periodic installment payments
depending upon the insured's continued disability, and he has no cause of action, nor the insurer

28  any liability, except for benefits which have accrued.")

1    benefits. It is true that in Erreca v. Western States Life Ins. Co. (1942) 19
     Cal.2d 388, 402, this court allowed the recovery of only accrued benefits in
2    an action for breach of a contract for disability insurance. We have never
     held, however, that future policy benefits

3    may not be recovered in a valid tort cause of action for breach of the
     implied covenant of good faith and fair dealing, nor does defendant offer
4    any compelling reason for extending Erreca to such actions. Thus, in
     applying to these facts the general rule for fixing tort damages (Civ. Code,
5    § 3333), the jury may include in the compensatory damage award future
     policy benefits that they reasonably conclude, after examination of the
6    policy's provisions and other evidence, the policy holder would have been
     entitled to receive had the contract been honored by the insurer. To the
7    extent it is inconsistent herewith, Austero v. National Cas. Co. (1978) 84
     Cal. App. 3d 1, 24-25 is disapproved.

8

9         Finally, plaintiff seeks relief for the loss of financial security. The Complaint, ¶ 26.  This

10   also can only be recovered under his claim for tortuous bad faith.  The court in *Heighley v. J.C.*

11   *Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1257 (C.D. Cal. 2003) held that:

12        The statute of limitations in insurance litigation depends upon the nature of
          the cause of action asserted. See Richardson v. Allstate Ins. Co., 117 Cal.
13        App. 3d 8, 11, 172 Cal. Rptr. 423 (1980). In Richardson, the plaintiff
          brought an action for breach of the implied covenant based on the defendant
14        automobile insurance company's refusal to pay expenses incurred as a result
          of an automobile accident. In determining the appropriate limitations
15        period, the court reasoned: 'Breach of the implied covenant of good faith is
          actionable because such conduct causes financial loss to the insured, and it
16        is the financial loss or risk of financial loss which defines the cause of
          action .... We are satisfied[,] accordingly, that a tort action against an
17        insurer for bad faith is subject to the two-year limitations period of section
          339, subdivision 1.'"

18

19   See also, *Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d 8, 11 (1980). There is no question that

20   plaintiff's first claim for relief is for tortuous bad faith as he seeks relief that only is recoverable

21   under a claim for tortuous bad faith.

22   **B.    Plaintiff's Claim for Relief for Bad Faith is Governed by a 2-Year Limitation Period**

23        Plaintiff's first claim for relief for tortuous bad faith in governed by the two-year limitation

24   period under C.C.P. § 339. *Archdale v. American Internat. Specialty Lines Ins. Co.*, supra, 154 Cal.

25   App. 4th at 472 ("A bad faith action in tort against an insurer for breach of the implied covenant of

26   good faith and fair dealing is governed by the two-year limitations period which Code of Civil

27   Procedure section 339, subdivision 1 establishes for '[a]n action upon a contract, obligation or

28   liability not founded upon an instrument of writing.'"); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d

1136, 1143 (1990) ("These obligations were breached on wrongful denial of the claim in 1981, and are time-barred. To the extent the Loves seek tort remedies on their claim for breach of the covenant of good faith and fair dealing, the claim is governed under and is barred by the two-year statute of limitations under Code of Civil Procedure section 339, subdivision 1.") *Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d, *supra*, 8, 13 (1981) ("We are satisfied, accordingly, that a tort action against an insurer for bad faith is subject to the two-year limitations period of section 339, subdivision 1."); *Heighley v. J.C. Penney Life Ins. Co.*, *supra*, 257 F. Supp. 2d at 1257.

**C.    Plaintiff's Claim for Relief for Intentional Infliction is Governed by a One Year Limitation Period**

Plaintiff's claim for relief for intentional infliction is governed by the one-year limitation period under C.C.P. § 340. *Magpali v. Farmers Group*, 48 Cal. App. 4th 471, 485 (1996) ("A claim for intentional infliction of emotional distress is governed by the one-year statute of limitations for intentional torts. (Code Civ. Proc., § 340, subd. (3)"); *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (1992) ("Because intentional infliction of emotional distress is an injury to the person, the applicable statute of limitations is one year. Code Civ. Proc., § 340, subd. (3)"); *Scannell v. County of Riverside*, 152 Cal. App. 3d 596, 616 (1984) ("The cause of action for intentional infliction of emotional distress is also subject to the one-year statute of limitations.").

**D.    Plaintiff's Claims for Relief for Bad Faith and Intentional Infliction Accrued When His Benefits Were Terminated in February 2004**

"The general rule for defining the accrual of a cause of action sets the date as the time when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. (Cites omitted). In other words, it sets the date as the time when the cause of action is complete with all of its elements." (Cites Omitted). *Norgart v. Upjohn Co.*, *supra*, 21 Cal. 4th at 397 (1999). Ordinarily, a cause of action accrues "on the date of the plaintiff's injury." *Slovensky v. Friedman,* 2006 Cal. App. LEXIS 1438 *17 (2006); *Love v. Fire Ins. Exchange* (1990) 221 Cal. App. 3d 1136, 1143.

Under California's discovery rule, accrual is "postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., as least has reason to suspect a factual basis

1  for its elements." *Slovensky v. Friedman, supra*, 2006 Cal. App. LEXIS at *17; *V.C. v. Los Angeles*

2  *Unified School Dist.*, 139 Cal. App. 4th 499, 515 (2006). The California Supreme Court, in *Fox v.*

3  *Ethicon Endo-Surgery, Inc.* 35 Cal. 4th 797, 806 (2005), stated the standard under the discovery

4  rule:

> A plaintiff has reason to discover a cause of action when he or she 'has
> reason at least to suspect a factual basis for its elements.' (Norgart v.
> Upjohn, supra, 21 Cal.4th at 398, citing Jolly v. Eli Lilly & Co. (1988) 44
> Cal.3d 1103; see also Gutierrez v. Mofid (1985) 39 Cal.3d 892, 897 [quote
> omitted] Under the discovery rule, suspicion of one or more of the elements
> of a cause of action, coupled with knowledge of any remaining elements,
> will generally trigger the statute of limitations period. (Norgart, supra, 21
> Cal.4th at p. 398, fn. 3; Jolly, supra, 44 Cal.3d at p. 1112.) Norgart
> explained that by discussing the discovery rule in terms of a plaintiff's
> suspicion of 'elements' of a cause of action, it was referring to the 'generic'
> elements of wrongdoing, causation, and harm. (Norgart, supra, 21 Cal.4th at
> p. 397.) In so using the term 'elements,' we do not take a hypertechnical
> approach to the application of the discovery rule. Rather than examining
> whether the plaintiffs suspect facts supporting each specific legal element
> of a particular cause of action, we look to whether the plaintiffs have reason
> to at least suspect that a type of wrongdoing has injured them.

14  See also*, Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1110-11 (1988) ("A plaintiff need not be aware

15  of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial

16  discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she

17  must decide whether to file suit or sit on her rights."); *Gutierrez v. Mofid,* 39 Cal. 3d 892, 897

18  (1985) (The limitation period begins to run "no later than the time the plaintiff learns, or should

19  have learned, the facts essential to his claim."); *Nelson v. Indevus Pharmaceuticals,* 2006 Cal. App.

20  LEXIS 1379 *6-7 (2006) (Considering the language in *Jolly, supra,* and citing *Fox,* the court held

21  that: "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to

22  suspect a factual basis for its elements.").

23         Under the standard California rule as articulated in *Norgart v. Upjohn Co, supra*, that a

24  claim accrues at the time the the wrongful act is done, a claim for tortuous bad faith accrues at the

25  time the contract is breached. *Romano v. Rockwell Internat.*, 14 Cal. 4th 479, 489 (1996) ("A cause

26  of action for breach of contract does not accrue before the time of breach."); *Neff v. New York Life*

27  *Ins. Co.* 30 Cal.2d 165, 172-173 (1947); *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120 (1997)

28  ("A cause of action for breach of contract accrues at the time of breach, which then starts the

1  limitations period running"); *Whorton v. Dillingham*, 202 Cal. App. 3d 447, 456 (1988).  Plaintiff

2  specifically alleges that the wrongful act by LINA in this matter, the bad faith denial of his

3  disability claim, took place in February 2004. The Complaint, ¶¶ 8-9.   Accordingly, plaintiff's

4  claim for tortuous bad faith accrued in February 2004.

5        The same is true for plaintiff's claim for intentional infliction. A claim for relief for

6  intentional infliction accrues when the outrageous conduct causes severe emotional distress. *Cantu*

7  *v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (1992) ("A cause of action for intentional

8  infliction of emotional distress accrues, and the statute of limitations begins to run, once the

9  plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the

10 defendant. Cite Omitted."). The outrageous conduct by LINA alleged in this matter is the handling

11 of plaintiff's disability claim and the denial of the claim in February 2004.  The Complaint, ¶¶ 1-13

12 & 16. The denial of the claim allegedly caused plaintiff severe emotional distress. *Id* at ¶¶ 16-19.

13 The alleged wrongful act, and resulting emotional distress, took place in February 2004 and

14 therefore plaintiff's claim for intentional infliction accrued on that date.

15       The application of the discovery rule does not change this analysis.   According to the

16 Complaint, plaintiff has been disabled, and unable to work, since July 2001.  Plaintiff alleges, in

17 paragraph 5 of the Complaint, that he worked at Sequoia Hospital "until he became disabled on or

18 about July 11, 2001.  Mr. Moctezuma *has been unable to work since that time* as he suffers from

19 Complex Regional Pain Syndrome, Reflex Sympathetic Dystrophy Left upper extremity, and Left

20 Lateral Epicondilitis."  The Complaint, ¶ 5.  Plaintiff also knew, during this period, that he had

21 disability insurance coverage under a policy issued by LINA.  The Complaint, ¶¶ 4-6.

22       Moreover, plaintiff received benefits under the Policy "from January 2, 2002 until February

23 2004, at which time defendant terminated benefits alleging that plaintiff was no longer disabled."

24 *Id.* at ¶ 8. Plaintiff alleges that "[t]he termination of benefits was made despite the continuing

25 disability of Mr. Moctezuma and in bad faith." *Id.* at ¶ 9.

26       Plaintiff goes on to allege that these "actions of defendants, set forth in paragraphs 1-13

27 above were and are extreme and outrageous and were and are known by them to be substantially

28 certain to cause Mr. Moctezuma great emotional harm." The Complaint, ¶ 16.  Each of the actions

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
328094.1                                    USDC NDCA Case #CV08-01451 CW

1  outlined in paragraph 1-13 took place prior to the denial of the claim for benefits and led up to the

2  denial of the claim for benefits.  According to plaintiff, defendants were well aware that he relied

3  upon defendant for his financial security and well-being, and that the arbitrary termination of

4  benefits would cause him great emotional and financial distress, and that in fact the termination of

5  benefits did cause him severe emotional distress. The Complaint, ¶¶ 18 & 19.

6          Under the discovery rule, a claim for relief accrues when the plaintiff " has reason at least to

7  suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc. supra,* 35 Cal. 4th at

8  806.  The allegations in the Complaint establish, as a matter of law, that under the discovery rule

9  plaintiff's claims for tortuous bad faith and intentional infliction accrued in February 2004 when his

10  disability claim was denied.  In February 2004, plaintiff knew he was disabled and he knew he had

11  coverage under the Policy.  He received benefits between January 2002 and February 2004.  Even

12  though he continued to be disabled, and allegedly entitled to continued benefits under the Policy,

13  defendants wrongfully terminated his benefit payments in bad faith in February 2004.  This alleged

14  outrageous conduct caused him great emotional distress.   The tortuous breach, the outrageous

15  conduct, and the extreme emotional distress occurred in February 2004 when LINA terminated

16  plaintiff's disability benefits even though he still was allegedly disabled.   According, plaintiff's

17  claims for relief for tortuous bad faith and intentional infliction of emotional distress occurred in

18  February 2004.

19  **E.      Plaintiff's First and Second Claims for Relief are Time Barred.**

20          The Complaint in this matter was filed on February 20, 2008. See Ex. A to LINA's Notice

21  of Removal.  Plaintiff's first claim for relief for tortuous bad faith is governed by a two year

22  limitation and his second claim for relief for intentional infliction is governed by a one year

23  limitation period.  Since these claims accrued in February 2004, each is time-barred.

24

25

26

27

28

1

V.     **CONCLUSION**

2

Based on the foregoing, LINA's motion to dismiss plaintiff's first and second claims for

3

relief should be granted as each claim for relief is time barred.

4

Dated: March 19, 2008                          WILSON, ELSER, MOSKOWITZ,
                                               EDELMAN & DICKER LLP

5

6

7

By: _____
    SEAN P. NALTY

8

Attorneys for Defendant
LIFE INSURANCE COMPANY
OF NORTH AMERICA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28